IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN D. SOUTER, JR.,
     Plaintiff,

vs.                                                                    Case No.: 3:10cv65/MCR/EMT

WARDEN ELLIS, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

       Plaintiff, proceeding pro se and in forma pauperis, commenced this case on February 24, 2010, by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. 1). Plaintiff subsequently filed a Second Amended Complaint (Doc. 34), which is the operative pleading. Plaintiff names twenty Defendants, all of whom are employed at the Santa Rosa Correctional Institution ("SRCI"): Warden David Ellis, Assistant Warden Haas, Assistant Warden Henderson, Institutional Inspector Dianne Ledkins, Colonel Monroe Barnes, Captain Jimmy Johnson, Captain Jack Hammontree, Lieutenant Andrew Williams, Lieutenant John Holodziej, Sergeant William Johnson, Sergeant Christopher Edelen, Sergeant Jeffrey Smith, Sergeant Steven Thomas, Correctional Officer Dennis Wells, Correction Officer William Weekley, Correctional Officer Kyle Hall, Correctional Officer James Frizzell, Correctional Officer Kenneth Barnes, Senior Licensed Practical Nurse Elva McCaig, and Senior Licensed Practical Nurse Doreen Von Oven (*id.* at 1–5).[1] Plaintiff alleges Defendants engaged in excessive force, were deliberately indifferent to his health and safety, and deprived him of adequate medical care, in violation of the Eighth Amendment (*id.*). He alleges the following facts in support of his claims.

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

On October 22, 2008, at approximately 8:15 a.m., Defendant Hall approached Plaintiff's cell and mentioned a disciplinary report for lewd and lascivious acts (Doc. 34 at 10). Plaintiff responded, "I don't play games. I've been doing time for a number of years and [an inmates is] considered a pervert for openly masterbation [sic]." (*id.*). Plaintiff states he and Hall engaged in a "verbal altercation" which awakened his cellmate, Inmate Morris (*id.*). Plaintiff states Defendant Hall stated, "Your maggot ass up here acting like a fag." (*id.*). Plaintiff responded, you must be mistaken about the infraction." (*id.*). Hall asked, "Why would I believe you over staff?" and then ordered Plaintiff to provide his name and inmate number (*id.*). Plaintiff responded that Hall was asinine or illiterate because the "face sheet" on the cell door stated his name and inmate number under his photograph (*id.*). Defendant Hall wrote Plaintiff's name and inmate number on his glove (*id.*). Plaintiff stated, "You're not scaring me with a bogus D.R." (*id.*). Hall responded, "Stupid n****. Today is the day you get it. I'll kick your testicles up in your guts." (*id.*). Plaintiff stated, "Let's see how you handle paperwork." (*id.*).

At approximately 8:25 a.m., Defendant Thomas told Plaintiff that filing paperwork would "get [his] neck broke." (Doc. 34 at 10). Plaintiff called for the lieutenant (*id.*). Defendant Williams responded to Plaintiff's cell, and Plaintiff stated, "I know you're not co-signing this bull****. I do not have a history of gunning [meaning, masturbating]." (*id.*). Defendant Williams left and returned with a computer printout listing Plaintiff's disciplinary infractions for the past fourteen years (*id.*). Plaintiff stated, "You're tripping if you're trying to use a 14-year-old D.R. to justify this." (*id.*). Williams stated, "Quit whining and wear it." (*id.*). Plaintiff gave the printout to Inmate Morris and stated, "Wear it." (*id.*). Williams then stated, "I thought you understood you don't run this dorm, Souter. This will be investigated and processed." (*id.*). Plaintiff states Defendant Thomas tapped the glass partition of the cell door with handcuffs and stated, "Let's go." (Doc. 34 at 10–11). Plaintiff responded, "Cuff-up for what? You and your team of goons can write your bogus D.R." (*id.* at 11). Thomas tapped again and said, "You either cuff up or get painted with this hot sauce [meaning, chemical agent]." (*id.*).

At approximately 8:55 a.m., Officer Parrott (who is not a named Defendant), came to Plaintiff's cell and stated, "You the fool up here with all that rah-rahing?" (Doc. 34 at 11). Plaintiff responded, "Get the f*** away from the cell." (*id.*). Parrott stated, "You dumb bastard" and left

(*id.*).  At 9:00 a.m., Officer Parrott returned to Plaintiff's dormitory and conducted a routine count (*id.*).  When he reached Plaintiff's cell, he kicked on the cell door while stating "Quit hitting your roommate, Souter, quit assaulting Inmate Morris."(*id.*).  Parrott then opened the food flap of the cell door and sprayed chemical agent (*id.*).  The chemical agent landed on Plaintiff's chest, neck, and shoulders (*id.*).  Plaintiff and Inmate Morris stood with their faces to the screened window to breathe (*id.*).  Parrott sprayed two more bursts of chemical agent, striking both inmates across their backs (*id.*).  Plaintiff experienced mucus constantly running from his nose, coughing fits, tearing eyes, blurred vision, intense difficulty breathing, and sudden panic (*id.*).  Inmate Morris stated, "We were not fighting." (*id.*).  Officer Parrott stated, "You're coming out one way or the other with enough paperwork to hold you on One [meaning, the most restrictive level of custody]." (*id.*).  Plaintiff began vomiting and told Defendant Hall that he and Morris needed medical care (*id.* at 12).  Defendant Hall stood and nodded his head (*id.*).

Approximately twenty minutes later, Officer Parrott, Defendant Hall, Defendant Hammontree, Defendant Williams, and Defendant Thomas attempted to extract Plaintiff from the cell (Doc. 34 at 12).  Defendant Weekley recorded the event with a camera (*id.*).  Plaintiff states the first attempt was "impeded." (*id.*).  During the second attempt, Defendant Hammontree opened the cell door and Officer Parrott entered the cell and screamed, "I'm cut!  I'm cut!"(*id.*).  Defendant M. Barnes entered the dormitory and stated, "Souter, there's no need to continue with is.  You may as well cuff up.  After what's transpired, there's no way you're going to stay here.  A van is parked up front to transport you out of here" (*id.*).  Plaintiff responded, "Do you think I'm going to let you spill my blood all over your jackboots?" (*id.*).  Defendant M. Barnes responded, "The camera is on and no harm will come to you." (*id.*).  Barnes then left the dormitory (*id.*).

At 10:15 a.m., Defendants Hammontree and J. Johnson stood at the cell door while Plaintiff undressed to remove the chemically soiled clothing (Doc. 34 at 12).  Johnson asked Plaintiff if he was ready to cuff up, and Plaintiff responded, "Give me a minute to bag my personal property." (*id.*).  Johnson stated that was not necessary because all of Plaintiff's property would be inventoried (*id.*).  Plaintiff stuffed his property into a bag and stood (*id.*).  Inmate Morris turned his back to the door to comply with being cuffed, but Defendant Hammontree stated they would not cuff Morris first (*id.*).  Hammontree told Plaintiff to step to the door (*id.* at 13).  Plaintiff complied, and Defendant

J. Johnson cuffed his hands behind his back (*id.*).  Johnson ordered Plaintiff to kneel on the floor, which was covered with orange chemical (*id.*).  Inmate Morris was removed from the cell (*id.*).

Defendants Edelen, Hall, W. Johnson, and Frizzell entered the cell (Doc. 34 at 13).  Since Plaintiff was on his knees, Edelen had to bend down to Plaintiff's waist to reach his left wrist (*id.*).  With his other hand, Edelen twisted Plaintiff's fingers of his left hand while stating, "Quit resisting."(*id.*).  Plaintiff states he was not resisting, but Edelen threw him forward and put both hands on the back of Plaintiff's head (*id.*).  Edelen then bashed Plaintiff's head on the concrete floor, causing Plaintiff's face to bleed (*id.*).  Edelen continued to lift Plaintiff's head and turn it, repeatedly bashing his face against the floor approximately ten or fifteen times (*id.*).  Plaintiff states he nearly lost consciousness because the only thing he sensed was the motion of his head being raised, turned, and bashed on the floor (*id.*).  Plaintiff states he suffered a large knot on the right side of his forehead and multiple lacerations on both sides of his face (*id.*).  Plaintiff states Defendants Hall, W. Johnson, and Frizzell stood in the cell and watched Edelen beat him, and Defendants Hammontree and J. Johnson stood in the doorway and watched (*id.*).  Defendants Williams, Thomas, Smith, and Holodziej stood behind Hammontree and J. Johnson, and made no effort to stop Edelen, even though they heard the thudding sound of Plaintiff's head striking the floor (*id.* at 13–14).  Defendant Weekley recorded Defendant Edelen's use of force (*id.* at 14).

Defendant J. Johnson instructed Edelen to place legs irons on Plaintiff's legs (Doc. 34 at 14).  Defendant Edelen placed both of his hands over Plaintiff's shoulder blades and pushed with his full weight, pressing Plaintiff's lacerated face into the pools of chemical agent on the floor (*id.*).  The direct exposure of the chemical agent to the cuts on his face caused jolts of sharp pain and uncontrollable shaking (*id.*).  Defendants W. Johnson and Hall shackled Plaintiff's ankles, and Defendant Frizzell secured a black box over Plaintiff's handcuffs (*id.*).  Defendants Edelen and W. Johnson led Plaintiff to the exit door of the wing (*id.*).  Defendant Henderson held the door open and watched as Plaintiff was led to another wing (*id.*).  Plaintiff was ordered to kneel across the threshold of the shower, and his leg restraints were removed in preparation for a decontamination shower (*id.*).  Defendant Holodziej then entered the area with orders to take Plaintiff to the nurses' station (*id.*).  Plaintiff was "awashed [sic] in agony, blood and munition substance" (*id.*).  Defendants Edelen, Hall, Hammontree, Williams, J. Johnson, W. Johnson, Thomas, Holodziej, Frizzell, and Weekley

were aware that Plaintiff had not been provided an opportunity to wash the blood and chemical agent off his body (*id.*).

After one leg restraint was reapplied, Defendants Wells and K. Barnes escorted Plaintiff to the nurses' station at 10:30 a.m. (Doc. 34 at 14–15). Plaintiff states the temporary effects of the chemical agent were exacerbated by its contact with the wounds to his face and head, causing "blinding pain" (*id.* at 15). Defendant Nurse Von Oven, Defendant Nurse McCaig, and Defendant Inspector Ledkins were in the nurses' station when Defendants Holodziej, Wells, and K. Barnes entered with Plaintiff (*id.*). Nurse McCaig swabbed Plaintiff's facial wounds with gauze several times, and each piece of gauze became stained with blood and orange chemical agent (*id.*). Nurse Von Oven supplied clean gauze and documented Plaintiff's injuries (*id.*). Plaintiff stated, "If Dr. Nichols is not here to treat me, why are you holding me when I need a shower and medical care?" (*id.*). Defendant Holodziej instructed the nurses not to respond (*id.*). Defendant Ledkins' assistant took close-up photographs of Plaintiff face, and Ledkins ordered officers to cut Plaintiff's clothing off him (*id.*). Orange stains from chemical agent were visible on Plaintiff's shoulders, neck, and back (*id.*). Plaintiff was re-clothed (*id.*). Nurse McCaig applied a bandage to Plaintiff's head (*id.*).

Plaintiff was escorted to the medical building (Doc. 34 at 16). At 11:00 a.m., Dr. Nichols (who is not a Defendant) numbed two areas of Plaintiff's face and sutured the lacerations (*id.*). Three of the lacerations required four sutures and a fourth laceration required three sutures (*id.*). Plaintiff was escorted to a cell in the back of the medical department (*id.*). Defendants Wells, K. Barnes, Williams, Hammontree, J. Johnson, W. Johnson, Frizzell, Smith, and Holodziej were present, and Defendant Weekley was still recording with a video camera (*id.*). A shower stall was located in the cell, and Plaintiff asked if he could shower (*id.*). The hand restraints were removed from behind his back, and he was permitted to run his arms through the sleeves of his new shirt, with the hand restraints re-secured in front (*id.*). At 12:00 p.m., Plaintiff was taken from the cell to a van (*id.*). Plaintiff asked that the air vents be opened, but the transporting officers ignored his request (*id.*). Thirty (30) minutes into the van ride, the movement, sweating, and lack of ventilation caused Plaintiff's skin to burn, and he became weak and nauseous from his condition and the lack of food and water (*id.*). Upon his arrival at Florida State Prison seven hours later, he scrubbed himself clean (*id.* at 16–17).

Plaintiff claims Defendant Edelen used excessive force by beating his head on the floor (Doc. 34 at 20).[2]  He claims Defendants Hammontree, Williams, J. Johnson, Holodziej, Thomas, W. Johnson, Smith, Hall, Frizzell, and Weekley were deliberately indifferent to his safety by failing to intervene or otherwise protect him from Edelen's alleged used of excessive force (*id.*).  He claims Defendants Hammontree, Williams, J. Johnson, Holodziej, Edelen, Thomas, W. Johnson, Hall, Frizzell, Weekley, Wells, Smith, K. Barnes, Ledkins, Von Oven, and McCaig were deliberately indifferent to his health and safety by failing to provide a decontamination shower after he was exposed to chemical agent (*id.* at 20–21).  He claims Defendants Ellis, Haas, Henderson, M. Barnes, and Ledkins are liable for the alleged constitutional violations of their subordinates because they knew, prior to October 22, 2008, of widespread use of excessive force by officers at SRCI and failed to correct the abuse (*id.* at 18–19).  Plaintiff also asserts Defendants Ellis, Haas, Henderson, M. Barnes, and Ledkins issued orders directing the acts of subordinates, which caused the alleged constitutional violations (*id.* at 19).  As relief, Plaintiff seeks a declaratory  judgment and nominal, compensatory, and punitive damages (*id.* at 18).

On March 23, 2011, Defendants filed a motion for partial dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure and submitted supporting materials with their motion (Doc. 81).  Defendants contend Plaintiff did not properly exhaust all of his claims.  They additionally contend Defendants Ellis, Haas, M. Barnes, and Ledkins are entitled to qualified immunity because Plaintiff has failed to state a claim against them.  Defendants also seek dismissal of Plaintiff's claims for monetary damages against them in their official capacities on grounds of Eleventh Amendment immunity.

Because Defendants presented matters outside the pleading, the court treated their motion for partial dismissal as one for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as

---

[2] Plaintiff additionally included a claim of excessive force against Officer Parrott and referenced Parrott's conduct in his factual allegations (*see* Doc. 34 at 11–12, 19–20).  However, Plaintiff did not name Officer Parrott as a Defendant in this lawsuit (*see id.* at 1–5).  Indeed, when the court identified the Defendants for purposes of the docket and ordered the clerk to issue summonses (*see* Doc. 42), Plaintiff did not raise error and has not done so in the seven months since the order issued.

one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  On March 25, 2011, the court advised the parties of the importance and ramifications of Rule 56 summary judgment consideration, informed the parties of the requirements of materials that may be considered on summary judgment, and directed Plaintiff to respond to the motion (Doc. 82).  Plaintiff filed a response with supporting materials (Doc. 86).

At the direction of the court, Defendants filed a supplemental memorandum clarifying their asserted grounds for dismissal (Doc. 91).  Plaintiff filed a response (Doc. 93).  Upon review of the record, it is the opinion of the undersigned that Defendants are entitled to partial summary judgment.

I.      LEGAL STANDARDS

        A.      Summary Judgment Standard

In order to prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial.  *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986).  If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*, 477 U.S. at 248.  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  Speculation or conjecture from a party cannot create a genuine issue of material fact.  *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005).  "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment."  Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324.  Plaintiff must either point to evidence in

the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *See* Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by Plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him.  *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999).  Nonetheless, Plaintiff still bears the burden of coming forward with sufficient evidence of every element that he must prove.  *See* Celotex Corp., 477 U.S. at 317.  A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

B.      Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), provides:  "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has stated that this "invigorated" exhaustion requirement is the "centerpiece" of the PLRA.  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2382, 165 L. Ed. 2d 368 (2006).  The exhaustion requirement helps to ensure that the "flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit."  Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 914, 166 L. Ed. 2d 798 (2007).  It also "attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  Woodford, 548 U.S. at 83 (quoting Porter v. Nussle, 534 U.S. 516, 525, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)) (footnote omitted).  The exhaustion requirement is mandatory, and there is no discretion to waive it.  *See* Woodford, 548 U.S. at 84; Alexander v. Hawk, 159 F.3d 1321, 1324–26 (11th Cir. 1998).  Additionally, the PLRA

exhaustion requirement requires <u>proper</u> exhaustion, which means that a prisoner must comply with the procedural rules of the institution's grievance system.  *See* <u>Woodford</u>, 548 U.S. at 93.

The administrative rules of the FDOC include an inmate grievance procedure, the goal of which is "to provide an inmate with a channel for the administrative settlement of a grievance . . . provid[e] additional means for internal resolution of problems and improv[e] lines of communication . . . [and] provide a written record in the event of subsequent judicial ro administrative review." Fla. Admin. Code r. 33-103.001(1).  The FDOC grievance procedures require an inmate to (1) file an informal grievance to the staff member responsible for the particular area of the problem, *see* Fla. Admin. Code Ann. r. 33-103.005; (2) file a formal grievance with the warden's office, *id.* at r. 33-103.006; and (3) submit an appeal to the Office of the Secretary of the FDOC, *id.* at r. 33-103.007.  However, if an inmate is filing a medical grievance, as was the case here, the initial informal grievance step may be omitted.  *Id.* at r. 33-103.006(3)(e).

A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim.  *See* <u>Parzyck v. Prison Health Services, Inc.</u>, 627 F.3d 1215, 1218–19 (11th Cir. 2010) (citing <u>Jones</u>, 549 U.S. at 219; <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207 (11th Cir. 2000) ("[W]hile § 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require that he do more than that.").  Section 1997e(a)'s exhaustion requirement is designed "to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued . . . ." <u>Jones</u>, 549 U.S. at 219 (quoting <u>Johnson v. Johnson</u>, 385 F.3d 503, 522 (5th Cir. 2004))).  Additionally, a prisoner need not file new grievances addressing every subsequent act by prison officials that contributed to the continuation of a problem already raised in earlier grievance in order to exhaust his administrative remedies.  *See* <u>Parzyck</u>, 627 F.3d at 1219. "The [federal exhaustion] statute merely requires inmates to complete the administrative review process in compliance with the prison's grievance procedures, so that there is 'time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  *Id.* (quoting <u>Woodford</u>, 548 U.S. at 93 (alteration and quotation marks omitted)).

C.    Excessive Force

Claims of excessive force by prison officials fall under the Eighth Amendment's proscription against cruel and unusual punishment.  The standard applied to Eighth Amendment claims has a

subjective and an objective component.  As to the objective component, "not every malevolent touch by a prison guard gives rise to a federal cause of action."  Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Hudson, supra (some internal quotation marks omitted).  An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.  Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Under the subjective component, to sustain an Eighth Amendment challenge it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L.  Ed. 2d 251 (1986).  "Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'"  Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting Whitley, 475 U.S. at 320–21).  In determining whether an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including:  "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response."  Hudson, 503 U.S. at 7–8; see also Whitley, 475 U.S. at 321; Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999).  From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."  Whitley, 475 U.S. at 321 (quoting Johnson, 481 F.2d at 1033).  Although the absence of serious injury is relevant to an excessive force claim, the core judicial inquiry is not whether a quantum of injury was sustained but rather whether force was applied in a good-faith effort to maintain or restore discipline or whether it was applied maliciously and sadistically to cause harm.  See Wilkins v. Gaddy, 130 S. Ct. 1175, 1178–79, 175 L. Ed. 2d 995 (2010); see also Hudson, 503 U.S. at 4.  Additionally, under Eleventh Circuit law, in cases in which a collective use of force

is alleged, the court need not analyze separately the force administered by each officer to determine which of the blows or other acts, if any, constituted the use of excessive force.  <u>Skrtich</u>, 280 F.3d. at 1302.

That officials followed prison regulations in administering force or restraint provides evidence that they acted in good faith and not to inflict pain.  <u>Campbell</u>, 169 F.3d at 1376 (citation omitted).  Thus, as summarized in <u>Campbell</u>, "[p]recedent dictates that [the determination whether defendants acted maliciously and sadistically for the very purpose of causing harm] be guided by the five <u>Hudson/Whitley</u> factors outlined above, by deference to prison officials' punitive judgments, and by this Court's previous holdings that compliance with prison policies evidences officials' good faith."  *Id.*

The Court in <u>Whitley</u> narrowed the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives.  Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

<u>Whitley</u>, 475 U.S. at 322 (emphasis added).

D.    <u>Failure to Intervene</u>

If an officer, whether supervisory or not, fails or refuses to take reasonable steps to protect the victim of another officer's use of excessive force, the officer may be held liable for the other officer's malfeasance under section 1983.  *See* <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1330 (11th Cir. 2008) (citing <u>Velazquez v. City of Hialeah</u>, 484 F.3d 1340, 1341 (11th Cir. 2007)); <u>Priester v. City of Riviera Beach, Fla.</u>, 208 F.3d 919, 924 (11th Cir. 2000); <u>Byrd v. Clark</u>, 783 F.2d. 1002, 1007 (11th Cir. 1986).  However, the non-intervening officer must have been in a position to intervene yet failed to do so.  *See* <u>Hadley</u>, 526 F.3d at 1331 (citing <u>Priester</u>, 208 F.3d at 924)).

E.    <u>Supervisory Liability</u>

Supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  *See* <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory

liability may occur either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. *See* Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

F.     Eleventh Amendment Immunity

The Eleventh Amendment is an absolute bar to suits for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their

official capacities.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); Edelman v. Jordan, 415 U.S. 651, 662–63, 94 S. Ct. 1347, 1355–56, 39 L. Ed. 2d 662 (1974).  Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment prohibits a suit against a state in federal court.  Kentucky v. Graham, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).  Florida has not waived its Eleventh Amendment immunity from suit in federal court.  See Fla. Stat. § 768.28(17).  Furthermore, Congress did not intend to abrogate a state's Eleventh Amendment immunity in § 1983 damage suits.  Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490 (11th Cir. 1995).  Florida has not waived its sovereign immunity or consented to be sued in damage suits brought pursuant to § 1983.  See Gamble v. Fla. Dep't of Health & Rehabilitative Servs., 779 F.2d 1509, 1513 (11th Cir. 1986).

     G.    Qualified Immunity

     The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).  This doctrine is intended to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, --- U.S. ----, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009).

     In Saucier v. Katz, the Supreme Court mandated a two-step process for lower courts to follow in resolving qualified immunity claims.  533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).  First, the court had to decide whether the facts that the plaintiff alleged showed a violation of a constitutional right.  Id.  Second, if the plaintiff satisfied the first step, the court had to determine whether "the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Pearson, 129 S. Ct. at 816 (quoting Saucier, 533 U.S. at 201, 121 S. Ct. 2151).

     The Supreme Court revisited Saucier's mandatory two-step inquiry in Pearson.  Id., 129 S. Ct. at 815–18.  The Court held that while the Saucier process is often appropriate, "it should no longer be regarded as mandatory"; rather, "[t]he judges of the district courts and the court of appeals

should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 818.

III.    ANALYSIS

As this case comes before the court on Defendants' motion for partial dismissal, which the court treats as one for partial summary judgment, the court views the facts in the light most favorable to Plaintiff, the non-moving party, *see* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993), drawing those facts from the pleadings, depositions, and other evidentiary materials on file.  Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts.  *See* Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

A.    Exhaustion of Administrative Remedies

Plaintiff alleges in his Second Amended Complaint that he exhausted his administrative remedies as to all of his claims (Doc. 34 at 6).  Defendants concede that Plaintiff exhausted one issue, Defendant Edelen's alleged use of excessive force on October 22, 2008 (Doc. 81 at 6–11; Doc. 91).  Defendants contend Plaintiff did not exhaust the following claims:  (1) Defendants' alleged failure to intervene or protect him from Edelen's use of excessive force, (2) the security staff's failure to provide a decontamination shower after Plaintiff's exposure to chemical agent, (3) Defendants' failure to provide medical treatment, and (4) the supervisory officials' (Ellis, Haas, Henderson, Ledkins, and M. Barnes) alleged failure to correct the widespread use of excessive force by officers at SRCI (*id.*).

In response to Defendants' exhaustion defense, Plaintiff submitted copies of administrative grievances he filed concerning the events of October 22, 2008 (Doc. 86, Ex. AA).  He filed fourteen informal grievances on February 11, 2009, directed to thirteen different prison officials at SRCI, including Defendants Ellis, Henderson, Haas, Ledkins, Williams, Edelen, Thomas, Hall, Weekley, an unidentified colonel, two unidentified lieutenants, and Officer Parrott (*id.*).  In one of the grievances directed to Warden Ellis, Plaintiff stated he was attaching thirteen more grievances regarding the "incident" on October 22, 2008 (*id.* at 1).  Plaintiff requested the names of three correctional officers, the unidentified colonel, and the two unidentified lieutenants (*id.*).  The

grievance was denied to the extent Plaintiff complained of the use of excessive force, on the ground that the issue was previously reported to the Office of the Inspector General for review and disposition; and if Plaintiff's allegations of excessive force were substantiated, appropriate action would be administered by the Inspector General's Office (*id.*). Plaintiff was advised that all other issues should be grieved separately (*id.*). Plaintiff appealed the denial to the Warden, complaining that he was being denied due process by the FDOC's failure to supply the names of officers directly involved in the use of excessive force on October 22, 2008 (*id.* at 2). The Warden denied the appeal on the ground that the response to the informal grievance appropriately addressed the concerns raised therein (*id.* at 3). The Warden additionally stated there was an approved use of force concerning the incident (*id.*). Plaintiff appealed the denial to the Central Office, log number 09-6-08331, complaining that the Warden's response was inappropriately vague and an attempt to "brush matters to the side in order to discredit them" (*id.*). The Central Office denied the appeal on the ground that the subject of Plaintiff's grievance was being reviewed by the Inspector General's Office (*id.* at 2). The Central Office advised Plaintiff that a copy of his complaint would be forwarded to the Inspector General's Office as part of its review, and upon completion of the review, information would be provided to appropriate administrators for final determination and handling (*id.*).

The other thirteen grievances raised the following issues relevant to the claims asserted in the Second Amended Complaint: (1) the use of excessive force during the cell extraction on October 22, 2008 (Ex. AA at 10, 20, 30, 40, 50, 90, 102) and (2) the failure of officers present during the cell extraction to prevent or intervene in the use of excessive force (*id.* at 60, 70, 80, 93, 96, 99). All of the informal grievances were denied on the ground that the issue was previously reported to the Office of the Inspector General for review and disposition; and if the Inspector General substantiated Plaintiff's complaints, appropriate action would be taken (*id.*). Plaintiff appealed each of the denials in a formal grievance to the Warden (*id.* at 11, 21, 31, 41, 51, 61, 71, 81, 91, 94, 97, 100, 103). In each of his appeals, which were identical, he additionally raised a new issue, that security officers failed to permit him to take a decontamination shower prior to the seven-hour trip to FSP (*id.*). The Warden denied each appeal on the ground that the response to the informal grievance appropriately addressed the concerns raised therein (*id.*). The Warden additionally stated there was an approved use of force concerning the incident (*id.*). Plaintiff sought further review by

appealing each of the Warden's denials to the Central Office (*id.* at 12, 22, 32, 42, 52, 62, 72, 82, 92, 95, 98, 101, 104).  In each of those appeals, which were identical, he complained about the excessive force incident on October 22, 2008, which resulted in injuries to his head, a "large knot" on his forehead, and multiple lacerations to both side of his face, requiring fourteen stitches (*id.*). He also complained he was denied adequate medical care and forced to endure a seven-hour van ride with no medical attention for his exposure to chemical agent (*id.*).  Plaintiff did not mention the security staff's failure to provide a decontamination shower (*id.*).  The Central Office denied one of his appeals, log number 09-6-08096, on the ground that the subject of the grievance was being reviewed by the Office of the Inspector General, and such review was initiated prior to receipt of his grievance (*id.* at 52).  The Central Office advised Plaintiff that a copy of his complaint would be forwarded to the Inspector General's Office to be included as part of their review, and upon completion of the review, information would be provided to appropriate administrators for final determination and handling (*id.*).  Additionally, the Central Office advised Plaintiff that the issue regarding medical treatment was a separate issue and should be grieved as such by initiating a grievance at the appropriate level (*id.*).  All of Plaintiff's other appeals to the Central Office were returned to him without action because they did not comply with administrative rules in that Plaintiff's issues were previously addressed in appeal log number 09-6-08096, and there was no provision in the administrative rules providing an appeal of a decision already rendered by the Central Office (*id.* at 12, 22, 32, 42, 62, 72, 82, 92, 95, 98, 101, 104).

In Plaintiff's response to Defendants' supplement to their motion to dismiss, Plaintiff submitted copies of additional grievances (Doc. 93, Exs. B, C).  Those grievances were filed in September and October of 2010, after Plaintiff commenced this case (*id.*).

Based upon the parties' submissions, the undersigned concludes that Plaintiff exhausted the following claims:  (1) Defendant Edelen's use of excessive force, (2) the supervisory Defendants' (Defendants Ellis, Haas, Henderson, M. Barnes, and Ledkins) liability for Edelen's use of force,[3] and (3) Defendants Hall, Hammontree, Thomas, Frizzell, J. Johnson, W. Johnson, Weekley, Smith,

---

[3] The conclusion that Plaintiff exhausted his claims against supervisory officials does not constitute a determination that Plaintiff stated a basis for holding them liable for the alleged constitutional violations.

and Holodziej's failure to prevent or intervene in the alleged use of excessive force by Edelen.  The undersigned further concludes that Plaintiff did not properly exhaust his claim that certain members of the security staff, namely, Defendants Hammontree, Williams, J. Johnson, Holodziej, Edelen, Thomas, W. Johnson, Hall, Frizzell, Weekley, Wells, Smith, and K. Barnes, failed to provide a decontamination shower.  Although Plaintiff included this issue in his formal grievances, he abandoned it in his appeals to the Central Office.  Additionally, Plaintiff did not properly exhaust his claim of denial of adequate medical care.  He did not present this issue in any of his informal or formal grievances, and when he first raised the medical treatment issue in his appeals to the Central Office, the Central Office did not address the merits of the issue but advised him that the issue was a separate issue from the excessive force issue and should be grieved as such by initiating a grievance at the appropriate level.  The procedural requirement that each appeal to the Central Office address only one issue or complaint is established by FDOC policy.  *See* Fla. Admin. Code r. 33-103.007(2)(f).  Since the PLRA exhaustion requirement requires <u>proper</u> exhaustion, which means that a prisoner must comply with the procedural rules of the institution's grievance system, *see* <u>Woodford</u>, 548 U.S. at 93, Plaintiff's 2009 grievances fail to show that he properly exhausted his claims that he was denied a decontamination shower and adequate medical treatment.

Further, although Plaintiff subsequently filed grievances complaining that he did not receive a post-use-of-force shower or adequate medical treatment, those grievances were filed in September and October of 2010, <u>after</u> Plaintiff filed the instant lawsuit in March of 2010 (*see* Doc. 1; Doc. 93, Exs. B, C).  Since proper exhaustion is a pre-condition to filing suit, those grievances are insufficient to show he exhausted his claims of failure to provide a decontamination shower and failure to provide adequate medical treatment.  Therefore, Plaintiff's claims against Defendants Hammontree, Williams, J. Johnson, Holodziej, Edelen, Thomas, W. Johnson, Hall, Frizzell, Weekley, Wells, Smith, and K. Barnes regarding their failure to provide a decontamination shower, and his claims against Defendants McCaig and Von Oven for their failure for provide a shower or other medical treatment for his exposure to chemical agent, are subject to dismissal for Plaintiff's failure to properly exhaust administrative remedies prior to filing suit.

      B.     <u>Failure to State a Claim against Defendants Ellis, M. Barnes, Henderson, Ledkins, and Haas with Regard to Exhausted Claims</u>

In the Second Amended Complaint, Plaintiff alleges Warden Ellis, Assistant Wardens Haas and Henderson, Colonel M. Barnes, and Inspector Ledkins are liable for the acts of their subordinates because they issued orders directing subordinates to (1) take Plaintiff from his cell to the shower in another wing after the use of force by Edelen, (2) take Plaintiff from the shower to the nurses' station, and (3) permit Plaintiff to put his arms through the sleeves of his new clothing just prior to being placed in the van (Doc. 34 at 17).  Plaintiff additionally alleges there was a widespread history of excessive force, threats, retaliation, and use of chemical agents as a means of punishment at SRCI (*id.*).

Defendants Ellis, Haas, Henderson, M. Barnes, and Ledkins contend they are entitled to qualified immunity because the evidence shows that Plaintiff will be unable to prove a sufficient basis for liability at trial (Doc. 81 at 3–5).

In Plaintiff's response to Defendants' motion, he attempts to prove the alleged history of widespread abuse by correctional officers at SRCI by submitting copies of grievances he filed in 2004, 2007, and 2008 (Ex. 86, Exs. B, C, D, E, F, G, H, I).[4]  He additionally submitted a purported affidavit of his mother, Madeline Souter (Doc. 86, Ex. I).[5]

---

[4] In 2004, Plaintiff filed a grievance with the Central Office complaining that two officers at SRCI had destroyed his legal work, magazines, and personal property during a cell search (Doc. 86, Ex. B).  Over three years later, in 2007, he filed another grievance with the Central Office complaining that certain officers (none of whom are Defendants) threatened to write false disciplinary reports and then wrote retaliatory disciplinary reports against him (*id.*, Ex. C).  Seven months later, in May of 2008, Plaintiff filed formal grievances with the Warden complaining that two officers (neither of whom are Defendants) retaliated against him by verbally threatening him and using racial epithets (*id.*, Exs. E, F).  In September of 2008, after Plaintiff had been moved to a different dormitory, Plaintiff filed a grievance with Defendant Ellis complaining that two officers (neither of whom are Defendants) antagonized and threatened him (*id.*, Ex. G).  On September 24, 2008, Plaintiff submitted another grievance to Warden Ellis complaining that one of the two officers mentioned in his earlier grievance threatened him again (*id.*, Ex. H).

[5] Whether the declaration of Plaintiff's mother qualifies as an affidavit for purposes of Rule 56 is questionable.  At the bottom of the first page, the following statement appears in Plaintiff's handwriting, "I declare under penalty of perjury that the foregoing is true & correct.  Executed at Kennesaw GA, on 16th of Nov. 2009.  Signature" (Doc. 86, Ex. I at 1).  However, Plaintiff's mother did not sign the declaration there; instead, her signature appears on the last page of the document (page 4), with no date and no declaration under penalty of perjury that her statements are true (*id.* at 4).  Ms. Souter states in 2007, she complained to two members of the correctional staff at SRCI (neither of whom are Defendants) and an unidentified administrator in the Central Office that Defendant Edelen and another officer (who is not a Defendant) took Plaintiff's radio and threatened him, and she feared for her son's life (*id.*).  Ms. Souter states she subsequently frequently called Plaintiff's classification officer to make sure Plaintiff was still alive (*id.*).  The remainder of Ms. Souter's declaration concerns her contact with SRCI staff in 2009, after the events underlying this action (*id.*).  In May of 2009, she told Mr. Davis at SRCI that Plaintiff told her an officer (who is not a Defendant) threatened him (*id.*).  Mr. Davis responded that he would investigate the situation (*id.*).  Two days later, Mr. Davis notified Ms. Souter

Upon review of the record, the undersigned concludes Plaintiff and his mother's prior complaints of destruction of personal property, threats, filing of false disciplinary reports, and antagonism by other officers do not suggest a history of pervasive, widespread use of excessive force by officers at SRCI prior to October 22, 2008, the date of the alleged use of excessive force and failure to intervene in this case.  Further, while one of the complaints concerned Defendant Edelen, it was not a complaint of excessive force but of allegedly taking Plaintiff's radio and threatening him, which was an isolated event that occurred in 2007.  Furthermore, Plaintiff has not shown the existence of a custom or policy that resulted in the use of excessive force or related failure to intervene.

Additionally, the facts viewed in the light most favorable to Plaintiff do not support an inference that any of the supervisory Defendants directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.  Although Plaintiff submitted evidence that Warden Ellis authorized the cell extraction and use of chemical agents on October 22, 2008 (*see* Doc. 86, Ex. A, Andrew Parrott Aff.), this evidence does not suggest he directed Defendant Edelen to use excessive force during the cell extraction or that Ellis knew or had reason to believe that Defendant Edelen would use excessive force during the cell extraction. Similarly, with regard to Colonel M. Barnes, the evidence shows only that Barnes attempted to persuade Plaintiff to submit to restraints prior to the cell extraction (*see* Doc. 34 at 12; Doc. 86, Ex. A, Monroe Barnes Aff.), but this does not suggest he knew or had reason to believe that Edelen would use excessive force during the cell extraction.  Likewise, with regard to Assistant Warden Henderson and Inspector Ledkins, Plaintiff alleges only that Henderson held open the door from one wing to another <u>after</u> the alleged use of excessive force and Ledkins was in the nurses' station when Plaintiff arrived there (Doc. 34 at 14, 15).  However, this evidence does not suggest Henderson or Ledkins knew or had reason to believe that Edelen would use or used excessive force during the cell extraction.  Finally, as to Assistant Warden Haas, Plaintiff does not allege, nor is there any evidence

---

that Defendant Haas and the Warden agreed to move Plaintiff to another dormitory (*id.*).  Four months later, in September of 2009, Ms. Souter called Defendant Haas to complain that an officer (who is not a Defendant) threatened to beat up Plaintiff and "gas" him (*id.*).  Defendant Haas referred Ms. Souter to Mr. Davis (*id.*).  Ms. Souter asked Mr. Davis to transfer Plaintiff to another institution (*id.*).  Mr. Davis subsequently responded that he and Defendant Haas determined Plaintiff would not be transferred (*id.*).

to suggest, Haas had any involvement in or knowledge of the events of October 22, 2008. Therefore, Defendants Ellis, M. Barnes, Henderson, Ledkins and Haas are entitled to qualified immunity with respect to Plaintiff's exhausted claims (the excessive force and failure to intervene claims).

      C.    <u>Claims for Monetary Damages Against Defendants in their Official Capacities</u>

As previously discussed, the Eleventh Amendment is an absolute bar to a suit for monetary damages by an individual against officers or employees of a state or its agencies in their official capacities.  Therefore, to the extent Plaintiff sues Defendants in their official capacities, his claims for monetary damages must be dismissed.

      D.    <u>Claim for Declaratory Relief</u>

Plaintiff was not incarcerated at SRCI when he commenced this lawsuit (*see* Doc. 1), nor has he been incarcerated there at any time during the pendency of this suit.  Therefore, his claim for declaratory relief does not present a case or controversy.  *See* <u>Spears v. Thigpen</u>, 846 F.2d 1327, 1328 (11th Cir. 1988) (an inmate's claims for injunctive and declaratory relief relating to conditions of his confinement at a specific institution no longer present a case or controversy once an inmate is transferred to another institution; therefore, such claims should be dismissed); <u>Wahl v. McIver</u>, 773 F.2d 1169, 1173 (11th Cir. 1985) (same).  Accordingly, Plaintiff's claim for declaratory relief should be dismissed.

Based upon the foregoing, it is respectfully **RECOMMENDED**:

1.    That Defendants' motion for partial dismissal (Doc. 81), construed as a motion for partial summary judgment, be **GRANTED IN PART** to following extent:

      a.    Plaintiff's claims against Defendants Elva McCaig and Doreen Von Oven be **DISMISSED without prejudice** for failure to exhaust administrative remedies;

      b.    Plaintiff's claims against Defendants Jack Hammontree, Andrew Williams, Jimmy Johnson, John Holodziej, Christopher Edelen, Steven Thomas, William Johnson, Kyle Hall, James Frizzell, William Weekley, Dennis Wells, Jeffrey Smith, and Kenneth Barnes for their failure to provide a decontamination shower be **DISMISSED without prejudice** for failure to exhaust administrative remedies;

      c.     Plaintiff's claims against Defendants David Ellis, Assistant Warden Haas, Assistant Warden Henderson, Dianne Ledkins, and Monroe Barnes be **DISMISSED with prejudice** for failure to state a claim;

      d.     Plaintiff's claims for monetary damages against all Defendants in their official capacities be **DISMISSED with prejudice** as barred by the Eleventh Amendment; and

      e.     Plaintiff's claim for declaratory relief be **DISMISSED with prejudice**.

      2.     That Defendants' motion for partial dismissal (Doc. 81), construed as a motion for partial summary judgment, be otherwise **DENIED** and the following claims against the following Defendants be permitted to proceed:

      a.     Plaintiff's Eighth Amendment claim against Defendant Christopher Edelen for the alleged use of excessive force on October 22, 2008; and

      b.     Plaintiff's Eighth Amendment claims against Defendants Jack Hammontree, Andrew Williams, Jimmy Johnson, John Holodziej, Steven Thomas, William Johnson, Jeffrey Smith, Kyle Hall, James Frizzell, and William Weekley, for failing to intervene or otherwise protect him from Edelen's alleged used of excessive force.

      3.     That Defendants David Ellis, Assistant Warden Haas, Assistant Warden Henderson, Dianne Ledkins, Monroe Barnes, Dennis Wells, Kenneth Barnes, Elva McCaig, and Doreen Von Oven be **DISMISSED** from this lawsuit.

      At Pensacola, Florida, this 15<u>th</u> day of June 2011.


                         /s/ *Elizabeth M. Timothy*            
                         **ELIZABETH M. TIMOTHY**
                         **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).