IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JOHN D. SOUTER, JR.,
      Plaintiff,

vs.                            Case No.: 3:10cv65/MCR/EMT

SGT. EDELEN, et al.,
      Defendants.
_____/

### ORDER and REPORT AND RECOMMENDATION

      Plaintiff, proceeding pro se and in forma pauperis, commenced this case on February 24, 2010, by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (doc. 1).  Plaintiff subsequently filed a Second Amended Complaint (doc. 34), which is the operative pleading.  Defendants filed a motion for partial dismissal, which the court construed as a motion for partial summary judgment and granted in part (*see* docs. 81, 103).  The court dismissed all of Plaintiff's claims against all Defendants except the following:  (1) Plaintiff's Eighth Amendment claim against Defendant Christopher Edelen for an alleged use of excessive force on October 22, 2008, and (2) Plaintiff's Eighth Amendment claims against Defendants Jack Hammontree, Andrew Williams, Jimmy Johnson, John Kolodziej,[1] Steven Thomas, William Johnson, Jeffrey Smith, Kyle Hall, James Frizzell, and William Weekley, for failing to intervene or otherwise protect Plaintiff from Edelen's alleged use of excessive force (*see* doc. 103).  Defendants have now filed a motion for summary judgment on these remaining claims (doc. 112).  Plaintiff responded in opposition to the motion (doc. 120).  Upon review of the evidence in the summary judgment record, it is the opinion of the undersigned that Defendants' motion should be granted in part and denied in part.

---

[1] The docket reflects an incorrect spelling of this Defendant's name.  The clerk will be directed to correct the misspelling.

I.      BACKGROUND AND PROCEDURAL HISTORY

This case involves a use of force at Santa Rosa Correctional Institution ("SRCI") on October 22, 2008.  Plaintiff is suing Sergeant Christopher Edelen, claiming that on October 22, 2008, Edelen used excessive force on him during a cell extraction, in violation of the Eighth Amendment to the United States Constitution (doc. 34 at 12–14).[2]  Plaintiff is suing Defendants Jack Hammontree, Andrew Williams, Jimmy Johnson, John Holodziej, Steven Thomas, William Johnson, Jeffrey Smith, Kyle Hall, James Frizzell, and William Weekley, for failing to intervene or otherwise protect him from Edelen's alleged use of excessive force  (*id.*).  Defendants, in their motion for summary judgment, argue they are entitled to summary judgment because the evidence shows the use of force was necessary to stop Plaintiff from harming another officer and to regain control of Plaintiff, who was unruly and may have possessed a weapon (doc. 112 at 7–10).  Therefore, Plaintiff cannot show a violation of his Eighth Amendment rights.  Defendants also contend they are entitled to qualified immunity, because no constitutional violation occurred (*id.* at 11–12).  The parties submitted evidence in support of their respective positions, including a videotape of the incident (docs. 112–14, 120).  The undersigned issued an order on September 8, 2011, notifying the parties that the court would take the motion under advisement thirty (30) days from that date, pursuant to Fed. R. Civ. P. 56 and Rule 56.1(B) of the Local Rules (doc. 116).

II.     MATERIAL FACTS

As this case comes before the court on Defendants' motion for summary judgment, the court views the facts in the light most favorable to Plaintiff, the non-moving party, *see* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993), drawing those facts from the pleadings, depositions, and other evidentiary materials on file.  Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts.  *See* Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).  The court conveys only those facts that are material.

---

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

With regard to the factual positions asserted by the parties, the court applies the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions.**  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> . . . .
>
> **(4) Affidavits or Declarations.**  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (2010).  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment, or grant summary judgment if Defendants' motion and supporting materials—including the facts considered undisputed—show that Defendants are entitled to it.  *See* Fed. R. Civ. P. 56(e)(2, 3) (2010).

Additionally, the court notes that most of the alleged use of excessive force incident was captured by a hand held video camera operated by one of the Defendants.  The videotape is part of the record (doc. 113, Ex. F).  The facts presented here are viewed in the light depicted by the videotape to the extent those facts are captured on camera.  *See* Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007) (stating that when a videotape of an incident is part of the record, the court should view the facts in the light depicted by the videotape).  However, not all material facts were captured by the camera due to the position of the camera and quality of the audio.

Finally, any facts included in Defendants' statement of material facts that are not controverted in Plaintiff's response are deemed admitted.  *See* N.D. Fla. Loc. R. 56.1(A) (all material facts set forth in moving party's statement of undisputed material facts will be deemed

admitted unless controverted by statement required to be filed and served by opposing party). Applying these standards, the court conveys the following as the material facts.

On October 10, 2008, Plaintiff had a telephone conversation with his mother, Madeline Souter, in which he told her "it ain't going to work" at SRCI and he needed a transfer; that he could not "hold it in anymore"; and that if he was given an "ole bullshit" disciplinary report ("DR"), he was going to hurt or kill "one of these crackers" in order to get a transfer (Defendants' Statement of Material and Genuine Facts ¶ 1; doc. 114, Ex. Y).[3]  He told his mother she needed to call the Regional Director or Secretary of the FDOC and ask that he be transferred from SRCI (doc. 114, Ex., Y).  He told her he would "hang on" until he heard from her (*id.*).  This conversation was discovered by an investigator after the October 22, 2008 use of force, described *infra* (*id.*).

At approximately 8:00 a.m. on October 22, 2008, Chaplain R. Jones reported to Defendant Hall that he observed Plaintiff masturbating while Plaintiff was lying on his bunk (doc. 112, Defendants' Statement of Material and Genuine Facts, ¶ 2; doc. 112-2, Ex. B).  At approximately 8:15 a.m., Defendant Hall approached Plaintiff's cell and told him he was receiving a DR for openly masturbating (doc. 34, Second Amended Complaint at 10).  Plaintiff and Hall engaged in a "verbal altercation" which awakened his cellmate, Inmate Morris (*id.*; doc. 114, Ex. Y, audio of sworn interview of Inmate James Morris).  Plaintiff states Defendant Hall stated, "Your maggot ass up here acting like a f\*\*." (doc. 34, Second Amended Complaint at 10).  Plaintiff responded, you must be mistaken about the infraction." (*id.*).  Hall asked, "Why would I believe you over staff?" and then ordered Plaintiff to provide his name and inmate number (*id.*).  Plaintiff told Hall he (Hall) was asinine or illiterate because the "face sheet" on the cell door stated his name and inmate number under his photograph (*id.*).  Defendant Hall wrote Plaintiff's name and inmate number on his glove (*id.*).  Plaintiff stated, "You're not scaring me with a bogus D.R." (*id.*).  Hall responded, "Stupid n\*\*\*\*\*.  Today is the day you get it.  I'll kick your testicles up in your guts." (*id.*).  Plaintiff stated, "Let's see how you handle paperwork." (*id.*).

---

[3] Plaintiff admitted in his deposition that he referred to white correctional officers as "crackers" (doc. 112-2, Ex. C, Deposition of John D. Souter, Jr. 17:2–4, July 20, 2011), which is a derogatory term.

At approximately 8:25 a.m., Defendant Thomas told Plaintiff that filing paperwork would "get [his] neck broke." (doc. 34, Second Amended Complaint at 10).  Plaintiff called for the lieutenant (*id.*).  Defendant Williams responded to Plaintiff's cell, and Plaintiff stated, "I know you're not co-signing this bull****.  I do not have a history of gunning [meaning, masturbating]." (*id.*).  Defendant Williams left and returned with a computer printout listing Plaintiff's disciplinary infractions for the past fourteen years (*id.*; doc. 114, Ex. Y, audio of sworn interview of Inmate James Morris).  Plaintiff stated, "You're tripping if you're trying to use a 14-year-old D.R. to justify this." (doc. 34, Second amended Complaint at 10).  Williams stated, "Quit whining and wear it." (*id.*).  Williams then stated, "I thought you understood you don't run this dorm, Souter.  This will be investigated and processed." (*id.*).  Plaintiff states Defendant Thomas tapped the glass partition of the cell door with handcuffs and stated, "Let's go." (*id.* at 10–11).  Plaintiff responded, "Cuff-up for what?  You and your team of goons can write your bogus D.R." (*id.* at 11).  Thomas tapped again and said, "You either cuff up or get painted with this hot sauce [meaning, chemical agent]." (*id.*).

At 9:00 a.m., Officer Andrew Parrott (not a Defendant) conducted a routine count in Plaintiff's dormitory (doc. 34, Second Amended Complaint at 11).  When he reached Plaintiff's cell at approximately 9:08, he states he observed Plaintiff striking Inmate Morris (doc. 112-1, Ex. A at 22, 23; doc. 112-2, Ex. D, Declaration of Andrew Parrott).  Officer Parrott ordered Plaintiff to stop assaulting Morris (doc. 34, Second Amended Complaint at 11; doc. 112-2, Ex. D, Parrott Decl.; doc. 112-1, Ex. A at 22, 23).  Parrott then opened the "food flap" of the cell door and administered three bursts of chemical agent Oleoresin Capsicum ("OC") (doc. 34, Second Amended Complaint at 11; doc. 112-2, Ex. D, Parrott Decl.; doc. 112-1, Ex. A at 22, 23; doc. 113, Ex. F).[4]  Plaintiff denies he assaulted Morris.  Additionally, he submitted an affidavit from Inmate Frank Wheeler, who was housed in the cell across from Plaintiff's, stating he could see into Plaintiff's cell and observed that

---

[4] It does not appear that this incident was the basis for a DR Plaintiff received for battery or attempted battery on an inmate.  The DR issued by Officer Parrott states Parrott observed Plaintiff striking Morris in the head and face with a closed fist at 9:25 a.m. (doc. 112-3, Ex. T).  This is consistent with Inmate Morris's sworn statement to an investigator that the assault by Plaintiff and application of chemical agent by Officer Parrott occurred immediately prior to Plaintiff's stabbing Officer Parrott, which occurred at 9:25 a.m., as set forth *infra* (doc. 114, Ex. Y, audio sworn statement of Inmate James Morris).

Plaintiff and Morris were not fighting (doc. 120-2, Affidavit of Frank Wheeler).[5]  Plaintiff states after the administration of chemical agent, he experienced mucus constantly running from his nose, coughing fits, tearing eyes, blurred vision, intense difficulty breathing, and sudden panic (doc. 34, Second Amended Complaint at 11).

At approximately 9:10 a.m., Defendant Thomas was advised by Officer Parrott to report to wing one of C-dormitory (Defendants' Statement of Material and Genuine Facts ¶ 4; doc. 112-2, Ex. E, Declaration of Steven Thomas).  Upon entering the wing, Officer Parrott advised Defendant Thomas that he had applied chemical agent on Plaintiff, for Plaintiff's allegedly assaulting his cellmate, Inmate Morris (*id.*). Defendant Thomas contacted Defendant Williams and advised him to report to wing one (*id.*).  Defendant Thomas also contacted Defendant Weekley and advised him to retrieve the C-dormitory hand held digital video camera and to report to wing one (Defendants' Statement of Material and Genuine Facts ¶ 4; doc. 112-2, Ex. E, Thomas Decl.; doc. 112-3, Ex. G, Declaration of William Weekley).  Defendant Thomas approached Plaintiff's cell, #C-1222, and ordered Plaintiff and Inmate Morris to submit to wrist restraints (Defendants' Statement of Material and Genuine Facts ¶ 4; doc. 112-2, Ex. E, Thomas Decl.).  Inmate Morris complied with the order and submitted to restraints, but Plaintiff refused to comply (*id.*).  The restraints were removed from Inmate Morris to prevent him from being helpless if Plaintiff became aggressive (*id.*).

Defendant Weekley began recording the events at Plaintiff's cell front at 9:13–9:14 a.m. (doc. 113, Ex. F; doc. 112-3, Ex. G, Weekley Decl.).  Defendant Thomas counseled with Plaintiff and gave him several verbal orders to submit to wrist restraints, but Plaintiff refused (Defendants' Statement of Material and Genuine Facts ¶ 4; doc. 112-2, Ex. E, Thomas Decl.; doc. 112-2, Ex. C, Deposition of John D. Souter 12:3–10, 20:23–25, 21:1–3, July 20, 2011; doc. 113, Ex. F).  At 9:19 a.m., Defendants Williams, Hammontree, and Hall arrived at the cell (Defendants' Statement of Material and Genuine Facts ¶ 4;; doc. 112-3, Ex. H, Declaration of Jack Hammontree; 112-3, Ex. J, Declaration of Kyle Hall; doc. 113, Ex. F).  Defendant Hammontree ordered Plaintiff to submit to restraints, but Plaintiff refused (Defendants' Statement of Material and Genuine Facts ¶ 4; doc.

---

[5] Whether Officer Parrott's administration of chemical agent was justified is not an issue in this lawsuit.

112-2, Ex. E, Thomas Decl.; doc. 112-3, Ex. H, Hammontree Decl.; doc. 112-3, Ex. J, Hall Decl.; doc. 113, Ex. F).

At 9:20, Officer Parrott and Defendant Frizzell arrived at the cell (doc. 112-3, Ex. I, Declaration of James Frizzell; doc. 113, Ex. F).  An attempt was made to remove Inmate Morris from the cell, but Plaintiff refused to comply with orders to allow Inmate Morris to exit (Defendants' Statement of Material and Genuine Facts ¶ 5; doc. 112-2, Ex. E, Thomas Decl.; doc. 112-3, Ex. H, Hammontree Decl.; doc. 113, Ex. F; doc. 34, Second Amended Complaint at 12).  Defendant Williams again ordered Plaintiff to submit to restraints, but he refused (doc. 113, Ex. F).  At 9:23 a.m. all officers except Defendant Thomas left the cell front (id.).  At 9:24–9:25 a.m., Williams, Hammontree, Hall, Parrott, and Frizzell returned to the cell (id.).  At 9:25 a.m., another attempt was made to remove Inmate Morris from the cell (doc. 34, Second Amended Complaint at 12).  The cell door was opened to give Inmate Morris an opportunity to quickly exit the cell, but Plaintiff grabbed Morris by the head in a headlock and pushed him out of the way, and then immediately moved toward the open cell door and stabbed Officer Parrott in the left chest area with an object (Defendants' Statement of Material and Genuine Facts ¶ 5; doc. 113, Ex. F; doc. 112-2, Ex. D, Declaration of Andrew Parrott; doc. 112-2, Ex. E, Thomas Decl.; doc. 112-3, Ex. H, Hammontree Decl.; doc. 112-2, Ex. I, Frizzell Decl.; doc. 112-3, Ex. J, Hall Decl.; doc. 114, Ex. Y, audio of sworn interview of Inmate James Morris).[6]  Plaintiff denies that either he or Inmate Morris attempted to stab an officer (doc. 112-2, Ex. C, Souter Dep. 12:21–25, 25:3–15); however, the video clearly depicts Plaintiff stabbing Officer Parrott (doc. 113, Ex. F).  Officer Parrott suffered a puncture wound, 1/2" in diameter and 1/2" deep, to the left side of his chest (doc. 112-1, Ex. A at 31–32).  Defendants Hall and Frizzell remained at the cell front (doc. 113, Ex. F), while Hammontree and Thomas went to the medical department with Officer Parrott (Defendants' Statement of Material and Genuine Facts ¶ 5; doc. 112-3. Ex. H, Hammontree Decl; doc. 112-2, Ex. E, Thomas Decl.).  Frizzell left the cell front, but Hall remained, and for the next six minutes, Plaintiff spoke to Hall through the cell door in an agitated manner (doc. 113, Ex. F; doc. 112-3, Ex. J, Hall Decl.).

---

[6] As previously discussed, Plaintiff received a DR for battery or attempted battery on an inmate based upon this incident (doc. 112-3, Ex. T).  He also received a DR for aggravated battery or attempted aggravated battery on a correctional officer, based upon his stabbing Officer Parrott (doc. 112-3, Ex. V).

At 9:33 a.m., Defendant J. Johnson, Defendant Kolodziej, and Colonel M. Barnes (no longer a Defendant) approached the cell front (Defendants' Statement of Material and Genuine Facts ¶ 6; doc. 112-3, Ex. N, Declaration of Jimmy Johnson; doc. 113, Ex. F).  Colonel Barnes counseled Plaintiff at the cell door and ordered him to submit to restraints, but Plaintiff adamantly refused (Defendants' Statement of Material and Genuine Facts ¶ 6; doc. 112-3, Ex. L, Declaration of Monroe Barnes; doc. 113, Ex. F).  Barnes, Williams, and Hammontree left the cell front at 9:35 a.m., and Kolodziej left shortly thereafter (doc. 113, Ex. F).  Defendants J. Johnson and Hall remained at the cell front (*id.*).

At 9:41 a.m., Defendants Smith and Frizzell returned to the cell front (doc. 113, Ex. F; doc. 112-3, Ex. O, Declaration of Jeffrey Smith).  Defendant Hall left the cell front at 9:43, and Defendant Kolodziej returned with Defendants Edelen and W. Johnson (doc. 113, Ex. F; doc. 112-3, Ex. M, Kolodziej Decl.; doc. 112-3, Ex. J, Hall Decl.).  At 9:43–9:44 a.m., Plaintiff and Inmate Morris agreed to submit to hand restraints (Defendants' Statement of Material and Genuine Facts ¶ 6; doc. 112-3, Ex. I, Frizzell Decl.; doc. 112-3, Ex. M, Kolodziej Decl.; doc. 112-3, Ex. N, J. Johnson Decl.; doc. 112-3, Ex. O, Smith Decl; doc. 112-3, Ex. P, Declaration of William Johnson; doc. 112-3, Ex. Q, Declaration of Christopher Edelen; doc. 113, Ex. F; doc. 34, Second Amended Complaint at 13).  Defendant Kolodziej applied hand restraints to Plaintiff and Inmate Morris, and Defendant J. Johnson ordered Morris to lie face down on the lower bunk (Defendants' Statement of Material and Genuine Facts ¶ 6; doc. 112-3, Ex. M, Kolodziej Decl.; doc. 112-3, Ex. N,  J. Johnson Decl.; doc. 112-3, Ex. O, Smith Decl.; doc. 112-3, Ex. P, W. Johnson Decl.; doc. 112-3, Ex. Q, Edelen Decl.; doc. 113, Ex. F; doc. 114, Ex. Y, audio of sworn statement by Inmate Morris).  Plaintiff was ordered to kneel down with his back to the cell door, but he refused (Defendants' Statement of Material and Genuine Facts ¶ 6; doc. 112-3, Ex. M, Kolodziej Decl.; doc. 112-3, Ex. N, J. Johnson Decl.; doc. 112-3, Ex. O, Smith Decl.; *see also* doc. 34, Second Amended Complaint at 13).  Defendant J. Johnson then ordered Plaintiff to step to the back of the cell, and Plaintiff complied (Defendants' Statement of Material and Genuine Facts ¶ 6; doc. 112-3, Ex. M, Kolodziej Decl.; doc. 112-3, Ex. N, J. Johnson Decl.; doc. 112-3, Ex. O, Smith Decl; doc. 113, Ex. F.).

At 9:44 a.m., Defendant J. Johnson ordered the cell door to be opened (doc. 112-3, Ex. M, Kolodziej Decl.; doc. 112-3, Ex. N, J. Johnson Decl.; doc. 112-3, Ex. O, Smith Decl; doc. 113, Ex.

F).  At exactly 9:45 a.m., Defendants Edelen, W. Johnson, and Kolodziej entered the cell, and Defendants Frizzell and J. Johnson entered shortly thereafter (Defendants' Statement of Material and Genuine Facts ¶ 6; doc. 112-3, Ex. M, Kolodziej Decl.; doc. 112-3, Ex. N, J. Johnson Decl.; doc. 112-3, Ex. O, Smith Decl.; doc. 112-3, Ex. P, W. Johnson Decl.; doc. 112-3, Ex. Q, Edelen Decl.; doc. 113, Ex. F).  The video depicts Plaintiff standing when Defendant Edelen entered the cell (doc. 113, Ex. F).  Defendant Edelen applied a custodial hold with his right hand on Plaintiff's upper left arm (Defendants' Statement of Material and Genuine Facts ¶ 7; doc. 112-3, Ex. Q, Edelen Decl., doc. 112-3, Ex. N, J. Johnson Decl.; doc. 112-3, Ex. P, W. Johnson Decl.)  Edelen knew that the object used to stab Officer Parrott had not ben recovered from the cell (doc. 112-3, Ex. Q, Edelen Decl.).  The interaction between Plaintiff and Defendants Edelen and W. Johnson during the next two-minute period is not depicted on the video and is hotly disputed by the parties.  Defendants state Plaintiff refused an order to kneel, attempted to kick Defendant W. Johnson while Johnson was attempting to apply leg restraints as Plaintiff was standing, and began to resist and pull away from Edelen's custodial touch (doc. 112-3, Ex. N, J. Johnson Decl., doc. 112-3, Ex. I, Frizzell Decl., doc. 112-3,  Ex. M, Kolodziej Decl., doc. 112-3, Ex. P, W. Johnson Decl., doc. 112-3, Ex. Q, Edelen Decl.).  Defendants state Edelen forced Plaintiff to the cement floor face down with Edelen's full body weight (260 pounds) to regain control of Plaintiff and prevent injury to staff (doc. 112-3, Ex. N, J. Johnson Decl., doc. 112-3, Ex. P, W. Johnson Decl., doc. 112-3, Ex. Q, Edelen Decl.).  Plaintiff states he did not refuse to kneel and did not resist as Defendants applied leg restraints, but Edelen shoved him face down to the floor and repeatedly (10 or 15 times) bashed his head on the floor (doc. 120-1, Affidavit of John D. Souter, Jr. at 5–6; doc. 112-2, Ex. C, Souter Dep. 32:1–18, 35:1–17; doc. 112-3, Ex. X, Souter Dep. 34:2–11).  Inmate Morris was face down on the bed and did not observe the interaction during this two-minute period (doc. 114, Ex. Y, audio of sworn statement of Inmate Morris).

The video shows that Defendants Frizzell, Kolodziej, and J. Johnson were in the cell with Defendants Edelen and W. Johnson during this period (doc. 113, Ex. F).  Defendant Smith entered the cell only momentarily and occasionally looked into the cell from the doorway (*id.*).

At 9:47 a.m., Defendants Smith and Kolodziej escorted Inmate Morris out of the cell (Defendants' Statement of Material and Genuine Facts ¶ 8; doc. 112-3,  Ex. M, Kolodziej Decl., doc.

112-3, Ex. O, Smith Decl.; doc. 113, Ex.  F).  Plaintiff was on his feet at that time, and Defendant Frizzell applied the black box and chain restraints to Plaintiff (doc. 112-3, Ex. I, Frizzell Decl.; doc. 112-3, Ex. N, J. Johnson Decl.; doc. 113, Ex. F).  At 9:48 a.m., Defendants Edelen and W. Johnson escorted Plaintiff out of the cell (doc. 112-3, Ex. N, J. Johnson Decl.; doc. 112-3, Ex. P, W. Johnson Decl.; doc 112-3, Ex. Q, Edelen Decl.; doc. 113, Ex. F).

Defendants Edelen and W. Johnson received post-use of force medical examinations, which showed no injuries (doc. 112-1, Ex. A at 56–57, 60–61; doc. 112-3, Ex. P, W. Johnson Decl.; doc. 112-3, Ex. Q, Edelen Decl.).  Plaintiff received a medical examination, which showed he suffered a hematoma to the right side of his forehead, a hematoma to his right cheek, three lacerations to the right side of his right eye measuring 1 1/2", 1/2" and 1/2" (for which he received four stitches, three stitches, and three stitches, respectively), a laceration to his left eyebrow measuring 1" (for which he received four stitches), swelling of the second joint of the fifth digit of his left hand, and swelling of the first joint of the third digit of his left hand (Defendants' Statement of Material and Genuine Facts ¶ 9; doc. 112-1, Ex. A at 87–89; *see also* doc. 120-2 at 1–4).  According to Dr. H. Hercule, a medical doctor and Acting Director of Medical Services for the Florida Department of Corrections, Plaintiff's injuries were consistent with being forced to the ground and hitting the cell floor, cell wall, and/or metal objects in the cell with one side of his face (doc. 112-3, Ex. X, Declaration of H. Hercule).  The injury to Plaintiff's left eyebrow was consistent with Plaintiff's eyeglasses lacerating him during the use of force (*id.*).  Dr. Hercule states Plaintiff's injuries were not consistent with numerous slams to a concrete floor, because one would expect to see hematomas to both side of the face if Plaintiff was actually treated in that manner (*id.*).

After Plaintiff received medical treatment, he was transferred to Florida State Prison (doc. 34 at 16–17; doc. 112, Defendants' Statement of Material and Genuine Facts ¶ 10).

III.    LEGAL STANDARDS

    A.    Summary Judgment Standard

        In order to prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial.  *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986).  If Defendants successfully negate an essential element of

Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324. Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See* Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by Plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him. *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, Plaintiff still bears the burden of coming forward with sufficient evidence of every element that he must prove. *See* Celotex Corp., 477 U.S. at 317. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

B.    Excessive Force

Claims of excessive force by prison officials fall under the Eighth Amendment's proscription against cruel and unusual punishment.  The standard applied to Eighth Amendment claims has a subjective and an objective component.  As to the objective component, "not every malevolent touch by a prison guard gives rise to a federal cause of action."  Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Hudson, *supra* (some internal quotation marks omitted).  An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.  *Id.* (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Under the subjective component, to sustain an Eighth Amendment challenge it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L.  Ed. 2d 251 (1986).  "Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'"  Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting Whitley, 475 U.S. at 320–21).  In determining whether an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including:  "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." Hudson, 503 U.S. at 7–8; *see also* Whitley, 475 U.S. at 321; Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999).  From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (quoting Johnson, 481 F.2d at 1033).  Although the absence of serious injury is relevant to an excessive force claim, the core judicial inquiry is not whether a quantum of injury was sustained but rather whether force was applied in a good-faith effort to maintain or restore discipline or whether it was applied maliciously and sadistically to cause

harm.  *See* Wilkins v. Gaddy, 130 S. Ct. 1175, 1178–79, 175 L. Ed. 2d 995 (2010); *see also* Hudson, 503 U.S. at 4.  Additionally, under Eleventh Circuit law, in cases in which a collective use of force is alleged, the court need not analyze separately the force administered by each officer to determine which of the blows or other acts, if any, constituted the use of excessive force.  Skrtich, 280 F.3d. at 1302.

      That officials followed prison regulations in administering force or restraint provides evidence that they acted in good faith and not to inflict pain.  Campbell, 169 F.3d at 1376 (citation omitted).  Thus, as summarized in Campbell, "[p]recedent dictates that [the determination whether defendants acted maliciously and sadistically for the very purpose of causing harm] be guided by the five Hudson/Whitley factors outlined above, by deference to prison officials' punitive judgments, and by this Court's previous holdings that compliance with prison policies evidences officials' good faith."  *Id.*

      The Court in Whitley narrowed the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives.  Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 322 (emphasis added).

      If an officer, whether supervisory or not, fails or refuses to take reasonable steps to protect the victim of another officer's use of excessive force, the officer may be held liable for the other officer's malfeasance under section 1983.  *See* Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008) (citing Velazquez v. City of Hialeah, 484 F.3d 1340, 1341 (11th Cir. 2007)); Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000); Byrd v. Clark, 783 F.2d. 1002, 1007 (11th Cir. 1986).  However, the non-intervening officer must have been in a position to intervene yet failed to do so.  *See* Hadley, 526 F.3d at 1331 (citing Priester, 208 F.3d at 924)).

      C.    Qualified Immunity

      The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).  This doctrine is intended to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, --- U.S. ----, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009).

In Saucier v. Katz, the Supreme Court mandated a two-step process for lower courts to follow in resolving qualified immunity claims.  533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).  First, the court had to decide whether the facts that the plaintiff alleged showed a violation of a constitutional right.  *Id.*  Second, if the plaintiff satisfied the first step, the court had to determine whether "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 129 S. Ct. at 816 (quoting Saucier, 533 U.S. at 201, 121 S. Ct. 2151).

The Supreme Court revisited Saucier's mandatory two-step inquiry in Pearson. *Id.*, 129 S. Ct. at 815–18.  The Court held that while the Saucier process is often appropriate, "it should no longer be regarded as mandatory"; rather, "[t]he judges of the district courts and the court of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.


IV.    ANALYSIS

As previously noted, the parties dispute what occurred during the interaction between Plaintiff and Defendants Edelen and W. Johnson during the two-minute period they were securing Plaintiff in the cell (9:45 a.m. to 9:47 a.m.).  This interaction cannot be seen from the vantage point of the video.  Defendants submitted evidence showing that Plaintiff refused an order to kneel, attempted to kick Defendant W. Johnson when Johnson attempted to apply leg restraints as Plaintiff was standing, and began to resist and pull away from Edelen's custodial touch (doc. 112-3, Ex. N, J. Johnson Decl., doc. 112-3, Ex. I, Frizzell Decl., doc. 112-3, Ex. M, Kolodziej Decl., doc. 112-3, Ex. P, W. Johnson Decl., doc. 112-3, Ex. Q, Edelen Decl.).  They submitted evidence showing that

Edelen responded by forcing Plaintiff to the cement floor face down (doc. 112-3, Ex. N, J. Johnson Decl., doc. 112-3, Ex. P, W. Johnson Decl., doc. 112-3, Ex. Q, Edelen Decl.).  Defendant Edelen denies he repeatedly bashed Plaintiff's head on the floor (doc. 112-3, Edelen Decl.).  He states his motive for pushing Plaintiff's head to the floor was to regain control of Plaintiff and prevent injury to staff (*id.*).  He states the weapon Plaintiff used to stab Officer Parrott had not been recovered from the cell (*id.*).  Plaintiff states he did not refuse to kneel and was not resisting, but Edelen pushed his head to the cement floor and repeatedly bashed it on the floor (doc. 120 at 5–6, 8; doc. 120-1, Souter Aff. at 5).  Plaintiff argues the video supports his position, because it does not show any "disruption" in the cell, nor does it show any Defendant reacting to a "disruption" (doc. 120-1, Souter Aff. at 5). Additionally, Inmate Wheeler's affidavit states he observed Plaintiff comply with the order to kneel, and as soon as Plaintiff's leg was cuffed, he saw the sergeant (Edelen) push Plaintiff's head to the floor (doc. 120-2 at 46–47, Wheeler Aff.).

Resolving all factual disputes in Plaintiff's favor, the evidence goes beyond a mere dispute over the reasonableness of Defendant Edelen's use of force, and would support a reliable inference of wantonness in Defendant Edelen's infliction of pain on Plaintiff.  In other words, evidence that Defendant Edelen pushed Plaintiff's head to the cement floor with his fully body weight of 260 pounds or bashed Plaintiff's head on the floor several times, of both, even though Plaintiff was restrained with hand restraints, followed orders to kneel, and did not resist as Defendants Edelen and W. Johnson applied leg restraints, supports a reliable inference that defendant Edelen's force was gratuitous and excessive.  A jury could also reasonably determine that Defendants W. Johnson, Frizzell, Kolodziej, and J. Johnson, all of whom were in the cell at the time, were in a position to intervene and failed to do so.  Therefore, Plaintiff has produced sufficient evidence of an Eighth Amendment violation to withstand summary judgment as to Defendants Edelen, W. Johnson, Frizzell, Kolodziej, and J. Johnson.  In light of this conclusion, Defendants' argument that they are entitled to qualified immunity, based solely on the ground that no Eighth Amendment violation occurred (*see* doc. 112 at 11–12), is unavailing.  *See* Skrtich, 280 F.3d at 1301 (holding that "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly

established to be a violation of the Constitution by the Supreme Court decisions in <u>Hudson</u> and <u>Whitley</u>." ).

With regard to Plaintiff's Eighth Amendment claim of failure to intervene by Defendant Jeffrey Smith, Defendant Smith's affidavit and the video show he had no involvement in the activity in the cell during the two-minute period Plaintiff was allegedly beaten.  Smith was only momentarily present in the cell, and his observation of the activity in the cell was very limited.  Plaintiff failed to produce sufficient evidence from which a reasonable jury could conclude that Smith was subjectively aware that the force used by Edelen was excessive, or that Smith was in a position to intervene.  Therefore, Defendant Jeffrey Smith is entitled to summary judgment in his favor.

As to Defendant Weekley, the parties do not dispute that Defendant Weekley's only role in the use of force was operating the video camera.  His affidavit states he witnessed only what can be viewed on the video.  The view depicted on the video demonstrates that Weekley's view of the events actually occurring in the cell was inhibited by his physical position several feet from the cell, as well as the positions of the officers in the cell, who were essentially huddled over Plaintiff.  Viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could conclude that Defendant Weekley was aware that excessive force was being used, or that he was in a position to intervene.  Therefore, Defendant William Weekley is entitled to summary judgment in his favor.

With regard to Plaintiff's claims against Defendants Andrew Williams, Steven Thomas, Kyle Hall, and Jack Hammontree for failure to intervene, Plaintiff failed to show a genuine issue of material fact as to whether any of these officers were aware of the use of excessive force or in a position to intervene.   Defendants submitted evidence that Williams, Thomas, Hall, and Hammontree did not participate in the use of force, nor did any of them witness it.  Plaintiff has failed to come forward with sufficient evidence from which a reasonable jury could conclude to the contrary.   Therefore, Defendants Andrew Williams, Steven Thomas, Kyle Hall, and Jack Hammontree are entitled to summary judgment in their favor.

V.      CONCLUSION

Viewing the evidence in the light most favorable to Plaintiff, the non-movant, genuine disputes of material fact exist which preclude summary judgment on Plaintiff's Eighth Amendment claim of excessive force by Defendant Edelen and Plaintiff's Eighth Amendment claims of failure

to intervene by Defendants Jimmy Johnson, John Kolodziej, William Johnson, and James Frizzell. Therefore, those five Defendants are not entitled to summary judgment.  However, there is insufficient evidence for a reasonable trier of fact to conclude that Defendants Andrew Williams, Steven Thomas, Kyle Hall, William Weekley, Jack Hammontree, and Jeffrey Smith violated the Eighth Amendment by failing to intervene in Edelen's use of force.  Therefore, those six Defendants are entitled to summary judgment in their favor.

Accordingly, it is **ORDERED**:

The clerk shall modify the docket to reflect the correct spelling of Defendant John Kolodziej's name (Kolodziej instead of Holodziej).

And it is respectfully **RECOMMENDED**:

1.      That Defendants' motion for summary judgment (doc. 112) be **GRANTED IN PART** to following extent:

a.      Plaintiff's claims against Defendants Andrew Williams, Steven Thomas, Kyle Hall, William Weekley, Jack Hammontree, and Jeffrey Smith be **DISMISSED with prejudice** for failure to state a claim;

2.      That Defendants' motion for summary judgment (doc. 112), be otherwise **DENIED** and the following claims against the following Defendants be permitted to proceed:

a.      Plaintiff's Eighth Amendment claim against Defendant Christopher Edelen for the alleged use of excessive force on October 22, 2008; and

b.      Plaintiff's Eighth Amendment claims against Defendants Jimmy Johnson, John Kolodziej, William Johnson, and James Frizzell for failing to intervene or otherwise protect Plaintiff from Edelen's alleged used of excessive force.

3.      That Defendants Andrew Williams, Steven Thomas, Kyle Hall, William Weekley, Jack Hammontree, and Jeffrey Smith be **DISMISSED** from this lawsuit.

At Pensacola, Florida, this 7ᵗʰ day of November 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**